Joseph T. SINOPOLE and Patricia W. Sinopole, Plaintiffs–Appellants,

v.

Hugh O. MORRIS, Winnie M. Morris, and Estelle C. Pezold, Defendants–Respondents.

No. 53013.

Missouri Court of Appeals,
Eastern District,
Division Four.

Dec. 29, 1987.

Richard M. Stout, Chesterfield, for plaintiffs-appellants.

Dan Dildine, Troy, Edward C. Ahlheim, St. Charles, for defendants-respondents.

SIMON, Presiding Judge.

This is the second appeal by plaintiffs, Joseph T. Sinopole and Patricia W. Sinopole, husband and wife, concerning the instant action. Their first appeal was dismissed without prejudice as premature. *See Sinopole v. Morris*, 735 S.W.2d 194 (Mo.App.1987). The judgment is now final and we proceed to the merits of the case.

Plaintiffs Sinopole sued defendants, Hugh O. and Winnie M. Morris, neighboring landowners, seeking in Count I of their three-count petition to quiet title to the north/south boundary line between defendants' and plaintiffs' properties. Plaintiffs' property lies to the south of defendants' property. In Count II, plaintiffs sought damages for defendants' trespass on a separate fifty foot strip of land. In Count III, plaintiffs sought an injunction barring defendants' use of the fifty foot strip of land. In a separate action, plaintiff Joseph T. Sinopole sued defendant Hugh O. Morris for malicious prosecution. This action was ordered consolidated for trial with plaintiffs' other claims.

Defendants counterclaimed, requesting quiet title to the disputed north/south boundary line separating defendants' and plaintiffs' properties and damages for trespass by plaintiff, Joseph T. Sinopole, on defendants' property. Defendants' counterclaim added an additional party, Estelle Pezold, the common grantor of plaintiffs' and defendants' properties, on the basis of her alleged adverse interest in defendants' property based on a deed of trust given to her by defendants.

The trial court granted plaintiffs the prayed-for injunction, and directed verdicts for defendants on plaintiffs' claims for trespass and malicious prosecution at the close of all the evidence. Further, a directed verdict for defendants on plaintiffs' quiet title claim was granted at the close of plaintiffs' evidence. The trial court directed a verdict for plaintiffs on defendants' counterclaim for trespass at the close of all the evidence. However, the trial court took defendants' counterclaim for quiet title under advisement, pending the appointment of a surveyor to determine the north/south boundary line between plaintiffs' and defendants' properties. The court appointed Robert Lewis, Warren County, Missouri surveyor, to prepare a survey of the southern boundary of defendants' property abutting plaintiffs' northern boundary. On December 18, 1986, having received the ordered survey, the trial court declared that the "southern boundary of Defendant's land and the northern boundary of Plaintiffs' land, the subject of dispute in this case, to be as shown by survey dated 11–86, revised 11–12–86, prepared by Robert Lee Lewis, registered land surveyor; said survey being of the southeast quarter of the northwest quarter of Section 2, Township 45 North, Range 1 West, Warren County, Missouri. The court declares the true boundary between the properties of the parties to be the line marked 'deed line' on the above referenced survey.

"It is the further order of the Court that the Clerk of this Court cause said survey to be filed of record with the Recorder of Deeds of Warren County. Charges for professional surveying services are taxed as costs, and the costs are assessed equally between the parties."

On appeal, plaintiffs maintain that the trial court erred in: (1) directing a verdict in defendants' favor on Joseph T. Sinopole's claim for malicious prosecution; (2) directing a verdict in defendants' favor on plaintiffs' trespass claim; (3) refusing to allow testimony by Joseph T. Sinopole as to the intent of the common grantor of plaintiffs' and defendants' property as to the location of the boundary line in dispute; (4) directing a verdict in favor of defendants on plaintiffs' claim for quiet title; (5) admitting into evidence the court ordered survey and in taxing costs for said survey equally between the parties; and (6) failing to describe within the decree the legal description of the properties and boundaries for which title had been quieted and in failing to describe the court ordered survey within the decree.

A summary of the facts pertinent to the instant appeal follows. On November 1, 1972, defendants purchased a track of land of approximately forty acres from Estelle

Pezold. Gene Ditch, a licensed surveyor, prepared a survey of defendants' property shortly before their purchase. Defendants paid for the survey. Defendants' deed was drawn in accordance with the survey. The Ditch survey, however, is not part of the record. An "old fence" runs near the southern boundary of defendants' property. The fence was there prior to defendants' purchase of the property. To the south of and parallel to the old fence is an old unimproved road, which existed prior to 1972.

On December 4, 1973, plaintiffs purchased from Estelle Pezold an 80 acre tract of land immediately to the south of defendants' property, and a 50 foot wide strip of land that extends northwardly from the northwest corner of the 80 acre tract to Joerling Lane, a public road. The 50 foot wide strip of land runs along the western boundary of defendants' property and is not involved in the north/south boundary line dispute between the parties.

Plaintiffs did not have a new survey commissioned at the time they purchased their property, because they walked along what was identified as the boundaries with the real estate agent. Mr. Sinopole testified that, in his understanding, the "old fence" represented the boundary between his property and that of defendants. Plaintiffs were unsuccessful in attempting to introduce statements allegedly made by Estelle Pezold, the common grantor, to the effect that the southern boundary of defendants' property was the "old fence."

Shortly after plaintiffs purchased their property a dispute arose between plaintiffs and defendants as to the ownership of the aforementioned 50-foot wide strip of land. From late 1973 or early 1974 through 1982, defendants farmed on the 50-foot wide strip without plaintiffs' permission. Defendants were using part of the 50-foot strip to graze cattle before plaintiffs purchased the land. In late 1982, plaintiffs, for the first time, informed defendants by letter that "this land will no longer be available to you." As soon as they received notice defendants terminated their use. At trial, defendants admitted that plaintiffs owned the 50-foot strip.

On July 27, 1982, a complaint was filed against Mr. Sinopole charging him with the infraction of trespass in the second degree. § 569.150, RSMo (1986). The complaint was signed by defendant, Mr. Morris, and notarized by Timothy Joyce, the prosecuting attorney of Warren County. Mr. Morris' complaint to the prosecutor was that plaintiff Joseph Sinopole had pulled up survey stakes in the aforementioned old road south of and parallel to the old fence. On the same date an information charged plaintiff, Mr. Sinopole, with the commission of the said infraction on property belonging to defendants, located at Joerling Lane, two miles west of Highway T in Warren County. The case was ultimately dismissed three days before trial.

Timothy Joyce testified that he had met Mr. Morris in June or July, 1982. Joyce produced a copy of a letter that he had written to Mr. Sinopole as a private attorney on behalf of Mr. Morris, in June, 1982. This letter made reference to "a survey which had been done for Mr. Morris that shows boundaries different from the pre-existing boundaries." (Apparently the boundaries set forth in the deeds of the parties). Joyce's notes indicated that Kirby Anderson was the surveyor. The Anderson survey has not been made part of the record. This letter was received by Mr. Sinopole, who discussed its contents with Mr. Joyce, before the criminal charge was filed.

Joyce later filed the information as prosecuting attorney pursuant to the complaint. The prosecutor's file contained a letter to Mr. Morris from Mr. Joyce, dated September 7, 1982, informing Mr. Morris of the trial date and stating that Mr. Morris should have the surveyor, Anderson, available for trial. At the trial of the instant case, Joyce identified a letter sent to Mr. Morris, dated October 1, 1982, stating in essence that since Mr. Morris had hired a private attorney and a civil case had been filed by plaintiffs, the criminal charge would be dismissed. Mr. Morris recalled being advised to seek other counsel. The

prosecutor's file also had a letter of the same date to the apparent private lawyer for Mr. Morris, informing the lawyer of the impending dismissal of the charge.

Mr. Joyce testified that when there is a boundary dispute, "we don't like to get involved" and that "it is very difficult to make [trespass] cases unless it is something blatant, someone constantly trespassing." Mr. Joyce had initially told Mr. Morris the difference between a criminal case and a civil case, that even if the criminal case were successful there would need to be a quiet title suit, and that probably Mr. Morris's chances were better in a civil case. Evidence was adduced from Mr. Sinopole that as of 1974, he understood that Mr. Morris was claiming land south of the "old fence," although he had never had any discussions with Mr. Morris concerning the claim prior to 1982.

In their first point, plaintiffs claim that the trial court erred in sustaining defendants' motion for directed verdict at the close of all the evidence as to Mr. Sinopole's claim for malicious prosecution.

In reviewing the alleged error, we note that if a plaintiff fails to adduce substantial evidence supporting his theory of recovery, then a directed verdict should be granted and the case taken from the jury. Sustaining a motion for a directed verdict is, however, a drastic action which should only be taken if all the evidence and reasonable inferences therefrom are so strongly against the plaintiff that reasonable minds cannot differ. *Delisi v. St. Luke's Episcopal–Presbyterian Hospital, Inc.,* 701 S.W.2d 170, 173 (Mo.App.1985). Of course, we are required to view the evidence in a light most favorable to plaintiffs and disregard defendants' evidence except insofar as it supports plaintiffs' case. *Id.*

A person suing on a theory of malicious prosecution must plead and prove six elements: (1) the commencement of a prosecution against the plaintiff; (2) the instigation by the defendant; (3) the termination of the proceeding in favor of the plaintiff; (4) the want of probable cause for the prosecution; (5) the defendant's conduct was actuated by malice; and (6) the plaintiff was damaged. *Sanders v. Daniel International Corporation,* 682 S.W.2d 803, 807 (Mo. banc 1984). In the instant case, we focus our attention on the fifth and crucial element of malice.

The concept of malice embraced by our Supreme Court in *Sanders* was explained thus:

> The tort of malicious prosecution is an intended wrong, not only in the sense that the defendant, by his deliberate and voluntary act, invaded the plaintiff's interest but in the sense that he intended the wrongful result. This means that he must have committed the acts complained of primarily for the purpose of harming the plaintiff.

*Sanders,* 682 S.W.2d at 813 (quoting F. Harper & F. Jones, Jr., I The Law of Torts § 4, at 320 (1956)). The court went on to say "that the acts on the part of the defendant, that constitute the basis of legal liability for the prosecution of the plaintiff, must have been actuated by malice." *Sanders,* 682 S.W.2d at 807. In *Sanders,* our Supreme Court decided that a plaintiff suing on a theory of malicious prosecution must prove "legal malice" on the part of defendant. *Id.* at 814. That is, plaintiff must prove "that defendant acted primarily for a purpose other than that of bringing an offender to justice and acted without reasonable grounds." *Id.* at 814, n. 4. However, if the defendant's purpose is otherwise proper, the addition of the incidental fact that he felt indignation or resentment toward the plaintiff will not make him liable. *Id.*

We recognize that ordinarily the question of malice is to be determined by the jury. *Jones v. Phillips Petroleum Co.,* 186 S.W.2d 868, 876 (Mo.App.1945). However, where only one conclusion may reasonably be drawn from the evidence there is no issue for submission to the jury. *Kauble v. MFA Mutual Insurance Company,* 637 S.W.2d 831, 833 (Mo.App.1982).

Viewing the evidence in the light most favorable to Mr. Sinopole, we find that he failed to produce substantial evidence that Mr. Morris acted primarily for a

purpose other than that of bringing an offender to justice and acted without reasonable grounds and, therefore, defendants' motion for directed verdict was providently granted. Mr. Sinopole testified that he was aware, as early as 1974, that Mr. Morris was claiming land south of the old road. Mr. Sinopole testified that he removed survey stakes from the old road. We cannot ignore, and it is undisputed, that conflicting surveys existed with respect to plaintiffs' and defendants' property. There was testimony that some of the surveys placed the southern boundary of defendants' property at points south of the old fence beyond the old road. Due to the surveys that indicated that the old road was on or part of his property, Mr. Morris had reasonable grounds to complain of the removal of the stakes. It is clear that Mr. Morris did not act primarily for an improper purpose. Point denied.

■■■ In their second point, plaintiffs assert that the trial court erred in directing a verdict in favor of defendants on their claim of trespass by defendants on plaintiffs' 50–foot strip of land. Defendants do not contest plaintiffs' ownership of the 50–foot strip. Defendants do not dispute that they used the land for agricultural purposes. The trial court found that the use of plaintiffs' property by defendants was by the implied consent of the plaintiffs and that, in any event, the evidence was insufficient to support a finding of damages.

In Missouri consent to trespass may be implied from conduct. *Boling Concrete Construction Company, Inc. v. Townsend*, 686 S.W.2d 842, 843 (Mo.App.1985). Here, defendants were using part of the 50–foot strip of land prior to its purchase by plaintiffs. Defendants continued their use of the property through 1982. It was not until late 1982, that plaintiffs, for the first time, informed defendants by letter that "this land will no longer be available to you." As soon as they received notice, defendants terminated their use. It is clear from plaintiffs' letter, and the testimony of plaintiff, Joseph Sinopole, that plaintiffs were aware of defendants use of the 50–foot strip, but took no action to stop

it. We conclude that plaintiffs impliedly consented to defendants' use of the land and, therefore, the point must be denied.

■ In their third point, plaintiffs maintain that the trial court erred in refusing to admit evidence that the common grantor of plaintiffs and defendants intended that defendants' southern boundary was the old fence. Plaintiffs' offer of proof was that at a meeting at which Gene Ditch, the original surveyor, Estelle Pezold, the common grantor, Mrs. Tidd, the real estate agent, plaintiffs and defendant, Mr. Morris, were present, Estelle Pezold stated that the southern boundary of Mr. Morris' property was the old fence. Plaintiffs wanted to elicit this evidence through the testimony of Mr. Sinopole. Mr. Sinopole testified that the meeting occurred after Gene Ditch completed the 1972 survey of defendants' property.

It is undisputed that the respective deeds of the parties make no reference to the old fence. Plaintiffs argue that because they sought to quiet title to land that is described differently than that described in their deed, i.e., the land delineated by the old fence, a latent ambiguity appeared in the deed. Plaintiffs argue further that such an ambiguity can be explained by parol evidence and, therefore, Mr. Sinopole should have been permitted to testify as to the grantor's intent.

Without deciding whether a latent ambiguity exists with respect to the deeds, we conclude that the trial court properly refused Mr. Sinopole's testimony as to the grantor's intent because such testimony constituted hearsay. We recognize that there is an exception to the hearsay rule for an assertion made by a person concerning real estate boundaries. V.H. Wigmore, Evidence § 1564, at 513–14 (Chadbourn rev. 1974). However, in order to fall within the exception, the assertion must have been made by a person knowledgeable about the boundary, now deceased, with no motive to misrepresent. *Id.* at §§ 1565, 1566 and 1568. Here, there is nothing in the record to indicate that Estelle Pezold, the common grantor, is deceased. Moreover, Estelle Pezold was made a party to the law suit by

defendants' counterclaim because she held an interest in the disputed property based upon a deed of trust from defendants dated November 3, 1972. Thus, the proferred testimony of Mr. Sinopole did not fall within the hearsay exception. Point denied.

In their fourth point, plaintiffs claim that the trial court erred in granting defendants' motion for directed verdict as to plaintiffs' claim seeking to quiet title. Plaintiffs argue that they had presented competent and substantial evidence as to the placement of defendants' southern boundary being along and proximate to the old fence and that said boundary location placed the old road on plaintiffs' property. In their petition, plaintiffs averred that the boundary line to their property is marked by the old fence. Plaintiffs prayed that the trial court declare the fence line to be the boundary between the property of plaintiffs and the property of defendants.

Plaintiffs argue that the proffered testimony of Mr. Sinopole, concerning the common grantors intent that the "old fence" constituted defendants' southern boundary, clearly was sufficient to quiet title in plaintiffs. As we have ruled, such evidence was hearsay. Moreover, Gene Ditch, the licensed and registered surveyor called as a witness by plaintiffs, testified that he surveyed the southern boundary line of defendants' property and placed it where Estelle Pezold wanted it to go. He testified that the boundary line was placed "very close to the fence but it's on the south side of the fence." He also testified that in places the line makes a "jog" so that part of the line is south of the fence and part of the line is north of the fence. Thus, there was no substantial evidence that the old fence constituted the boundary line between plaintiffs' and defendants' properties.

Nevertheless, plaintiffs argue that the trial court could have adjudicated plaintiffs' interest in the old road based on the general equitable relief requested in their prayer. It is true, as plaintiffs point out, that Gene Ditch testified that all of the old road was on the south side (on plaintiffs' side) of his surveyed boundary line. However, the court ordered survey shows that all of the old road is to the south of the "deed line" and that it is entirely on plaintiffs' property. As will be noted in the next point, plaintiffs must be afforded an opportunity to challenge the survey, but at this point they have suffered no prejudice at the trial court's failure to adjudicate their interest in the old road based upon the general equitable relief requested in their petition. Point denied.

In their fifth point, plaintiffs claim that the trial court erred in admitting into evidence the survey of the court appointed surveyor, Robert Lewis. Plaintiffs also claim error in the trial court's order assessing court costs and the expenses of said survey as between the parties. Plaintiffs argue that it was error to admit the survey into evidence because plaintiffs had no opportunity to cross-examine the surveyor and inquire into the methods by which the survey was prepared.

In *Wills v. Meador*, 638 S.W.2d 297 (Mo. App.1982), a dispute arose as to the boundary line between the plaintiffs and the defendants. A survey was ordered by the trial judge to be made of the disputed area. Judgment was entered declaring the boundary line as shown on the survey ordered by the court. Defendants appealed asserting, inter alia, that the trial court erred in relying on the survey because defendants were not given the opportunity to examine the surveyor. In reversing, the court stated:

[w]here the evidence leaves a description of property uncertain, trial courts have the power to direct a survey to determine the facts necessary for a proper judgment and to tax the expense of the survey as cost. *State ex rel. County of Shannon v. Chilton*, 626 S.W.2d 426, 429–430 (Mo.App.1981). See also 11 C.J. S. Boundaries § 121, p. 736. However, a judgment cannot be based on an improper survey. *Probst v. Probst* [595 S.W.2d 289, 291 (Mo.App.1979). See also *Roberts v. Harms*,] 627 S.W.2d 924, 926 (Mo. App.1982); *Cornelius v. Tubbesing*, 593 S.W.2d 609, 610 (Mo.App.1980); *Wells v.*

88

*Elder,* 544 S.W.2d 258, 259 (Mo.App. 1976).

Defendants should have received an opportunity to challenge the survey. The parties are entitled to question a surveyor appointed by the court in the same manner as any expert called as a court witness. *United States v. Cline,* 388 F.2d 294, 296 (4th Cir.1968). See also *In re S____ M____ W____,* 485 S.W. 2d 158, 162–164 (Mo.App.1972); *H____ B____ v. R____ B____,* 449 S.W.2d 890, 893 (Mo.App.1970).

*Id.* at 298. Here, the court appointed surveyor was not called as a witness and plaintiffs had no opportunity to challenge the survey. The survey was received by the court and utilized in its judgment without anything further. Thus, plaintiffs' point is meritorious. However, we find no abuse of discretion by the trial court in assessing costs and expenses of the survey between the parties.

In their final point, plaintiffs claim that the trial court erred in not describing within its decree the properties for which title has been quieted and the boundaries to be delineated, and in basing its judgment on extrinsic evidence of the survey, because the survey is not included within the court's judgment.

It is well settled that a decree that affects title to real estate should describe the land in question with certainty so that the description will support a later conveyance of the property. *Tripp v. Harryman,* 613 S.W.2d 943, 951 (Mo.App.1981). Here, the disputed tract of land involved is so described. The decree declares that "the southern boundary of Defendants' land and the northern boundary of Plaintiffs' land ... to be as shown by the survey dated 11–86, reviewed 11–12–86, prepared by Robert Lee Lewis, registered land surveyor ... The court declares the true boundary between the properties of the parties to be the line marked 'deed line' on the above referenced survey." The decree ordered that the survey be filed of record with the Recorder of Deeds of Warren County.

From the foregoing, we conclude that the cause must be reversed and remanded so

that a hearing can be conducted to afford the parties the opportunity to challenge the court ordered survey embodied in the judgment. Upon rehearing, if it is determined the court ordered survey was properly made and if so, the court may reenter the present judgment, or if not, it may order additions or corrections to the survey or such other relief it deems appropriate. The judgment is affirmed in all other respects.

Judgment affirmed in part and reversed and remanded in part.

CRANDALL and GRIMM, JJ., concur.