# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-2741

_____

Joseph L. Cassady,                              \*
                                                \*
            Appellee,                           \*
                                                \*    Appeal from the United States
      v.                                        \*    District Court for the
                                                \*    Western District of Missouri.
Dillard Department Stores, doing                \*
business as Dillard's, Inc.,                    \*
                                                \*
            Appellant.                          \*

_____

Submitted:  January 14, 1999
    Filed:  February 19, 1999

_____

Before BOWMAN, Chief Judge, MURPHY, Circuit Judge, and VIETOR,[1] District
      Judge.

_____

BOWMAN, Chief Judge.

Dillard Department Stores appeals from the judgment of the District Court entered on a jury verdict in favor of Joseph Cassady on his claim of malicious prosecution. We vacate the judgment of the District Court and remand for entry of judgment as a matter of law (JAML) in favor of Dillard's.

_____

[1]The Honorable Harold D. Vietor, United States District Judge for the Southern District of Iowa, sitting by designation.

We review de novo the District Court's decision to deny Dillard's motion for JAML, viewing the evidence in the light most favorable to the verdict and giving Cassady the benefit of all reasonable inferences that may be drawn from the evidence. See Roberts v. Unidynamics Corp., 126 F.3d 1088, 1092 (8th Cir. 1997), cert. denied, 118 S. Ct. 1676 (1998). We will direct entry of JAML only if no reasonable jury could have found in favor of Cassady on his claim. See id. Mindful of the foregoing principles, we recite the facts of the case.

On May 24, 1995, Cassady was in the Dillard's store in Jefferson City, Missouri, when the store manager saw him behaving suspiciously, or so she believed. She watched him leave the store and take a few steps into the enclosed mall (exactly how far he ventured into the mall is disputed). He had in his hand a shirt and a pair of socks that he had picked up in the men's department and for which he had not paid. Cassady later said he had left the men's department with the items to see if his girlfriend's sister, who worked in the lingerie department in the store, was there so that she could ring up his purchases. When he saw she was not there, he inadvertently stepped out of the store as he left the lingerie department. When the store manager stopped him and took him back into the store to the customer service department, he did not offer this explanation–or any explanation–for why he had left the store without paying. Instead, when they arrived at customer service, Cassady dropped the clothing on a table and quickly exited the store into the parking lot. As the manager gave chase, yelling at him to stop, Cassady began to run and continued running at least until he left the parking lot and was out of the view of the manager. He called a friend from a payphone at a nearby business and asked the friend to come pick him up. Cassady left his own vehicle parked in the mall lot and retrieved it later.

Dillard's called the police to report the incident. A Dillard's employee was able to identify Cassady for police, and officers went to his home and issued him a summons for stealing. One of the officers told Cassady he would be barred from returning to the store. On that same day, Joy Sweigert, a security officer for the

Dillard's store, sent Cassady a form "barment" notice which read in pertinent part as follows:

> You are hereby notified that from this day forward, you are not permitted to enter upon the physical premises of Dillard's Department Stores for any purpose whatsoever.
>
> Your failure to heed this warning and come upon the premises [sic], will result in your being prosecuted for the crime of trespass, as set forth in section 569.140 of the Revised Statutes of Missouri. This notification may not be rescinded by any store employee, and may only be rescinded by the manager in writing.

Letter of May 24, 1995, from Joy A. Sweigert to Joseph L. Cassady. It is the usual practice of Dillard's to give shoplifting suspects the notice in person and to verbally advise them of the policy. But because Cassady had absconded almost immediately upon being returned to the store, Sweigert sent the notice by registered mail, return receipt requested. Unbeknownst to Dillard's, the zip code in the address used was incorrect. Nevertheless, Cassady received the notice and signed the return receipt.

The stealing charge was presented to a grand jury in late July 1995. An indictment did not issue because the grand jury returned a no-true bill. At that time, with the stealing charge dismissed, Cassady believed he was free to return to Dillard's, even though he had not received written permission from the store manager as the barment notice required. From August 1995 to October 1996, Cassady estimated that he was in the Jefferson City Dillard's store five to ten times.

In December 1995, Cassady was in the store returning some items when an employee who witnessed the May incident recognized him and called security. His signature on the return merchandise form matched the signature on the return receipt from the barment notice. Cassady was no longer in the store by the time security

-3-

arrived on the scene, so Sweigert mailed him a second barment notice. This time she added a handwritten note indicating that his barment had not been rescinded by the manager as the notice required. According to the note, if Cassady were seen in the store again he would "be arrested and prosecuted for legal trespass." Letter of Dec. 22, 1995, from Joy A. Sweigert to J. Cassady. Using the same address as she had used to mail the first notice, and still unaware that the zip code was not correct, Sweigert sent the notice to Cassady by regular mail. The notice was not returned to Dillard's, but Cassady testified that he never received it.

On October 9, 1996, Cassady returned to the store to buy some men's clothing from a Dillard's salesman who had been recommended to him. A Dillard's employee again recognized Cassady and notified security. By that time, Cassady had left the store having purchased a sport coat, pants, and accessories. He paid nearly $300 for the items and wrote a check that was approved by management. Sweigert compared the signature on the check with the signature on the return receipt from 1995, realized Cassady in fact had re-entered the store in violation of the barment notices, and called the police.

Sweigert told the investigating officer that she wanted trespass charges filed against Cassady. After talking with Cassady the next day, the officer spoke about the case with Richard Lee, an investigator and warrant officer in the Cole County prosecutor's office. The police officer was unsure how to proceed because he did not think he had probable cause to arrest Cassady, notwithstanding Dillard's insistence that Cassady be prosecuted. Lee told the officer to do a report and a warrant application, and the prosecutor's office would handle it. Cassady was charged with trespass in the second degree, an infraction (that is, not a criminal charge). Counsel for Cassady then spoke with the prosecuting attorney, and the decision was made not to proceed with any charge. Lee called Sweigert and told her that his boss, the prosecutor, was uncomfortable with the charge against Cassady because of the time that had passed since Cassady had received the barment notice and because of

Cassady's $300 purchase from Dillard's on the day of the alleged trespass. He told her that Dillard's could swear out a citizen's complaint for trespass and that she should check with her superiors before deciding. Sweigert told Lee that she wished to proceed with a complaint. Given the choice of an infraction or a criminal charge, she elected to charge Cassady with trespass in the first degree, a class B misdemeanor (the trespass charge referenced by the Missouri Revised Statutes section number in the barment notice). That same day, Sweigert signed the citizen's complaint against Cassady for trespass.

The case was prepared by the prosecutor's office and tried by a law student intern, with help from an assistant prosecutor. A jury found Cassady not guilty of trespass in April 1997. He filed a claim against Dillard's for malicious prosecution (among other charges) in May 1997 in Cole County Circuit Court. Dillard's removed the case to federal court on diversity grounds. The case was tried and submitted to a jury only on the malicious prosecution charge. The jury returned a verdict for Cassady, awarding him $50,000 in compensatory damages and $150,000 in punitive damages. Dillard's appeals.

Under Missouri law, which we are obliged to apply in this diversity case, the successful plaintiff in a malicious prosecution action "must plead and prove six elements: (1) the commencement of a prosecution against the plaintiff; (2) instigation by the defendant; (3) termination of the proceeding in favor of the plaintiff; (4) the want of probable cause for the prosecution; (5) [that] the defendant's conduct was actuated by malice[;] and (6) that the plaintiff was damaged." Bramon v. U-Haul, Inc., 945 S.W.2d 676, 684 (Mo. Ct. App. 1997). In the present case, sufficient proof of the first three elements is without dispute.

After a careful review of the record, however, we conclude that Cassady's proof fails on at least one of the remaining elements. Missouri favors a public policy that encourages citizen involvement and cooperation in the reporting and prosecution of

-5-

crime.  See Sanders v. Daniel Int'l Corp., 682 S.W.2d 803, 806 (Mo. 1984) (en banc). Inasmuch as malicious prosecution actions "tend[] to dilute" that public policy, courts "require strict proof of each element of the tort."  Id. (quoted case omitted); see also Burnett v. Griffith, 769 S.W.2d 780, 783 (Mo. 1989) (en banc) (noting "the requirement that proof of the essential elements of malicious prosecution be strict and clear").  We hold there was insufficient "strict and clear" proof that Dillard's had the requisite malice to sustain a judgment in Cassady's favor.

In Sanders, the seminal Missouri case on the mental state required to prove a claim of malicious prosecution, the Missouri Supreme Court stated that, in order "[t]o subject a person to liability for malicious prosecution, the proceedings must have been initiated primarily for a purpose other than that of bringing an offender to justice."  682 S.W.2d at 814 (quoting Restatement (Second) of Torts § 668 (1965)). To demonstrate the legal malice necessary to sustain the judgment, Cassady was required to show either that Dillard's had an illegitimate motive for the prosecution, or that it knowingly acted with flagrant disregard for Cassady's rights so that an improper motive may be inferred.  See Shaffer v. Sears, Roebuck & Co., 689 S.W.2d 683, 686 (Mo. Ct. App. 1985).  He did not do so.

The evidence in this case does not prove a culpable mental state on the part of Dillard's.  Dillard's reasonably suspected that Cassady was a shoplifter and gave him notice that he was barred from Dillard's unless and until the store manager gave him written permission to return.  The notice also threatened Cassady with prosecution for criminal trespass if he returned without the necessary consent.  Dillard's even sent a second notice when Cassady was spotted in the store, a cautionary act unprecedented in Joy Sweigert's twelve years' experience as a store security officer.[2]  The form

---

[2]Cassady makes much of the fact that he testified he did not receive the second notice.  But it is the mental state of Dillard's, not Cassady, that matters here.  Dillard's sent the notice using the same address as on the first notice, believing that address was correct and knowing for a fact that Cassady had received the first notice.  The

notice was the same as the first, but included an explicit, handwritten note: Sweigert knew that Cassady had re-entered the store after he had received the first barment notice, and he had done so without first receiving written permission from the store manager. Sweigert warned Cassady again that he would be arrested and prosecuted for criminal trespass if in the future he violated the barment policy and returned to the store without the written consent of the manager. Dillard's believed that Cassady had received this second notice, and such belief is inconsistent with the culpable mental state required for a showing of legal malice. There simply is no evidence that Dillard's wantonly disregarded Cassady's rights by prosecuting him for trespass.

Moreover, there is no indication in the record that Dillard's had any motivation for the prosecution other than enforcing both the law and Dillard's own right to bar from its store any person who, store security had reason to believe, posed a shoplifting risk. Dillard's admittedly had little experience with prosecuting trespassers who had received a barment notice, because most people served such a notice apparently had obeyed it and were not seen in the store again. Nevertheless, Dillard's surely had every right to enforce its loss prevention policy (and the law) against Cassady if for no other reason than to deter other barred patrons who might think they too could return to the store at will and on their own terms.

Cassady maintains that Dillard's was miffed at the no-true bill returned on the stealing charge Dillard's had brought against him. He claims that this attitude precipitated the trespass prosecution and therefore is compelling evidence of legal malice. We disagree with that analysis. In a malicious prosecution case, "if the defendant's purpose [for prosecuting] is otherwise proper, the addition of the incidental fact that he felt indignation or resentment toward the plaintiff will not make him liable." Sinopole v. Morris, 743 S.W.2d 81, 85 (Mo. Ct. App. 1987). As we

---

second notice never was returned to the store, and Dillard's had every reason to believe Cassady received its follow-up barment notice.

have discussed, Dillard's had legitimate reasons for prosecuting Cassady–bringing an offender to justice and enforcing its loss prevention policy–and acted reasonably in doing so.

Cassady argues that he had reason to believe he was welcome in the store and thus the prosecution for trespass must have been malicious. He points to the dismissal of the stealing charge; the purchases he made on some of his visits to the store after he was barred; and the credit card account with Dillard's that he maintained until early 1996, which apparently generated mailings to him advertising in-store sales and promotions. Cassady misses the point. Cassady's personal view of whether Dillard's wished for him to return to its stores goes to his defense on the trespass charge; what he may have believed about Dillard's intentions is of no consequence to his later claim of malicious prosecution. Only Dillard's mental state is material here. Whether Cassady thought he was welcome in the store notwithstanding the shoplifting incident is irrelevant to the true question: did Dillard's act with a wrongful motive or wantonly disregard Cassady's rights in prosecuting him for trespass?

Of course, some of the actions about which Cassady complains do go to Dillard's state of mind, but as a matter of law they do not demonstrate the legal malice that Cassady is required to prove. It is true that Dillard's did not cancel Cassady's credit account upon his barment, and the company therefore maintained his name on a mailing list. At least two store employees approved the check he wrote on the day of the alleged trespass and neither of them noted that the name on the check belonged to someone who had been forbidden from entering the store. Dillard's kept a list and a book of photographs of barred persons for the use of security and certain managerial personnel (although Cassady's photo was not in the book because he fled the store at the time of the alleged stealing, and photos are normally taken after apprehension and the concurrent in-store investigation of an incident). But it was Dillard's policy, for reasons relating to privacy, not to circulate that information among its clerks. Thus

there was no way that the average clerk (that is, one lacking any special knowledge) who might see a barred person in the store would be aware of that person's status. Now, these may be careless or imprudent business practices that inhibit Dillard's in the enforcement of its own loss prevention policies, but it does not follow that such sloppiness is evidence of the necessary animus towards Cassady. As it happened, he *was* seen and identified by someone who knew he was on notice that he was not allowed in the store; Dillard's then reasonably decided to prosecute him for trespass. Finally, in Dillard's legitimate estimation–and we reiterate that it is Dillard's mental state that is relevant here–Cassady was no less a trespasser under the language of the relevant statute simply because he made a substantial purchase upon his visit to the store.[3]

Finally, there is the matter of Dillard's swearing out a citizen's complaint against Cassady when the county prosecutor declined to do so. Lee, the warrant officer for the prosecutor's office, did tell Dillard's that the prosecuting attorney was not comfortable bringing trespass charges against Cassady. But he also told Sweigert that she (on behalf of Dillard's) could swear out a complaint and the county would prosecute. He never said that Dillard's could not or should not bring its own complaint, nor did he tell Sweigert that there was no probable cause or legal basis for the complaint. The prosecutor's evident judgment that he wished to use the resources

---

[3]"In Missouri consent to trespass may be implied from conduct." Sinopole v. Morris, 743 S.W.2d 81, 86 (Mo. Ct. App. 1987). We need not and do not decide whether Dillard's actions in allowing Cassady in the store five to ten times after his barment and allowing him to make purchases accord with the sort of conduct from which permission may be inferred. In light of the very specific terms of the barment notice as to how the barment could be rescinded, we doubt that implied consent would be found in these circumstances. We do not decide the question, however, because (we say again) whether Cassady thought he had consent to return to Dillard's store would go to the legal question of whether he had the necessary intent to commit trespass, and not to whether Dillard's had an improper motive or disregarded his rights in prosecuting him for trespass.

of his office on cases with which he was more "comfortable" is not proof that Dillard's acted with malice in going forward with the citizen's complaint. Further, the ultimate adjudication of the trespass charge in Cassady's favor "is not evidence of the culpable mental state embodied in the 'legal malice' standard required to establish liability for malicious prosecution." Beard v. St. Mary's Health Ctr., 735 S.W.2d 27, 29 (Mo. Ct. App. 1987).

We do not consider the other arguments raised by Dillard's in this appeal as it is not necessary for us to do so. On this record, there is insufficient evidence of legal malice to make a submissible case for malicious prosecution. Dillard's was entitled to JAML on Cassady's claim. Therefore, we vacate the judgment of the District Court and remand for entry of JAML in Dillard's favor.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-10-