**Eldon BUGG, Appellant,**

v.

**VANHOOSER HOLSEN & EFTINK PC, et. al., Respondent.**

No. WD 63569.

Missouri Court of Appeals, Western District.

Dec. 7, 2004.

Rehearing Denied Feb. 1, 2005.

Eldon Bugg, Columbia, MO, pro se.

Kevin E. Glynn, Kansas City, for Respondent.

Before HAROLD L. LOWENSTEIN, PATRICIA A. BRECKENRIDGE, and JAMES M. SMART, JR., JJ.

PER CURIAM.

Eldon K. Bugg appeals the trial court's ruling granting summary judgment to Gerald D. Eftink and his Cass County law firm, VanHooser, Holsen and Eftink, P.C. Mr. Bugg's petition against the defendants purported to plead claims of abuse of process, defamation, and *prima facie* tort. All claims were related to a letter authored by Mr. Eftink in November 1998 and mailed to the Chief Disciplinary Counsel, who is appointed by the Supreme Court and authorized to conduct investigations into lawyer misconduct and the unauthorized practice of law. Because we determine that the defendants were entitled to judgment as a matter of law, we affirm.

## Background

The following facts are undisputed. Eldon K. Bugg, a non-lawyer, is the general manager of Caldwell Computing Technology, Inc., a business located in Boone County. Caldwell supplies computer-related products and services to the livestock auction industry. Mr. Eftink and his law firm are retained counsel for the Livestock Marketing Association, Inc. The Association has members that have purchased or leased equipment and software from Caldwell. Because of litigation matters that arose out of Caldwell's contracts with members of the Association, Eftink and

other lawyers in his firm became acquainted with Bugg.

In several different cases, Bugg brought an action in his own name as an assignee of Caldwell's contract claims in an effort to recover amounts allegedly due to Caldwell under lease contracts. Bugg paid a nominal amount, ranging up to $10, for each assignment from Caldwell. The agreements with Caldwell provided that Bugg could keep whatever he recovered. One case involved a lessee of Caldwell, Tri-States Livestock, Inc. In that case, Bugg took from Tri-States, the lessee, an assignment of a claim against an insurance company. The claim was for electrical damage to a computer caused by lightning. In Bugg's complaint, he alleged that the cause of action assigned to him included damages for loss of property. He also purported, as assignee, to seek recovery of damages for "stress and humiliation."

In his November 1998 letter to the Office of the Chief Disciplinary Counsel, Eftink set forth factual assertions related to the above matters. Eftink also included the following statements:

I think this is an improper attempt to practice law without a license.

It appears to us that Mr. Bugg is a salaried employee and officer of the corporation and that he has simply been employing a strategy to get around the requirement that the corporation appear in court by counsel.

I suspect that the corporation is compensating Mr. Bugg for his efforts and that if he ever collects on any of these cases, he will "assign" the money back to the corporation.

I would appreciate it if your office would check into the matter of Mr. Eldon K. Bugg.

In February 1999, the Office of the Chief Disciplinary Counsel wrote to Bugg, stating that it was investigating reports concerning his activities to determine whether he was engaged in the unauthorized practice of law. The letter also stated, in pertinent part:

While a natural person may represent himself in court, a corporation may not. Our Missouri courts have stated that those who are officers, directors and in management positions in corporations may not bring suit on their own behalf as assignees of that entity. It will be considered the unauthorized practice of law. *Property Exchange and Sales, Inc. v. Bozarth*, 778 S.W.2d 1 (Mo.App.1989). Please advise us what position you have with Caldwell Computing Technology, Inc. for if you do not think that the *Property Exchange and Sales, Inc. v. Bozarth* case applies in your situation, please explain to us why not.

The letter also suggested that he seek legal advice as to his responsibilities and requested that he respond within two weeks.

Several days later, Bugg responded, stating that he was merely an employee of the corporation. Any claim he might acquire from the corporation, he said, was for good and valuable consideration. Any legal remedy he sought through the courts was as a natural person and as the rightful owner of the claim. He suggested this distinguished his actions from those in *Bozarth*.

In March 1999, the Office of the Chief Disciplinary Counsel ("OCDC") replied to Mr. Bugg's letter, indicating that the OCDC would not take further action on the matter at that time. The OCDC indicated that litigants could raise the issue when Bugg appears in court. The letter stated the OCDC was not deciding at that time whether Bugg's activities constituted the unauthorized practice of law.

In February 2001, Bugg filed his petition against Eftink and Eftink's law firm alleging abuse of process, defamation, and *prima facie* tort. Thereafter, defendants moved for summary judgment, claiming entitlement to judgment as a matter of law and asserting numerous legal defenses to plaintiff's claims. After considering the arguments of both sides, the trial court granted defendants' motion for summary judgment.

On appeal, Bugg contends that the trial court erred in granting judgment to defendants because defendants did not show entitlement to judgment.

## Standard of Review

Pursuant to Rule 74.04, judgment may be granted when there is no dispute as to any material fact and a party is entitled to judgment as a matter of law. *See ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 380 (Mo.App.1993). This court reviews the record in the light most favorable to the party against whom the judgment was entered. *Id.* at 376. Facts set forth in affidavits or otherwise in support of a party's motion for summary judgment are taken as true unless contradicted by the non-moving party's responses to the motion. *Id.* The non-movant is accorded all reasonable inferences from the record. *Id.* The court's review is essentially *de novo,* and the criteria for determining the propriety of a summary judgment on appeal are no different from that which the trial court would employ in deciding to sustain the motion initially. *Id.* The propriety of a summary judgment is purely an issue of law, and because the trial court's judgment is founded on the record submitted and the law, this court does not defer to the trial court's order granting the judgment. *Id.*

## Analysis

The trial court in this case did not specify the basis of its ruling on the summary judgment motion. There were various defenses asserted by the defendants, including privilege, truth, justification, and lack of damage to plaintiff's reputation. We assume the trial court granted judgment on one or all of these theories. If the judgment was properly entered, we will sustain the judgment on any theory, even if not the theory relied upon by the trial court.

We need not delve into all the particulars of all the parties' positions if there is a complete legal defense that would entitle the defendants to judgment on all of the claims in question. Therefore, we start by discerning whether any of the defenses raised herein would constitute, as a matter of law, a complete bar to all claims. It appears at first blush that several different defenses are meritorious defenses, at least as to some claims, if not all. Because the defense of privilege would clearly be applicable to all claims if valid in this instance, we will first consider the defense of privilege.

Respondents argue that the letter in question is privileged because it was a good faith communication to the Chief Disciplinary Counsel concerning the unauthorized practice of law. Respondent lawyers rely upon the Missouri Supreme Court Rule 5.315, which provides:

> Communications submitted to the . . . chief disciplinary counsel . . . or the staffs . . . relating to lawyer misconduct or disability are absolutely privileged if submitted in good faith. No lawsuit predicated on such communications may be instituted.

While the rule uses the term "lawyer misconduct" and makes no reference to non-lawyers engaged in the unauthorized practice of law, Respondents argue that

the privilege applies here just as much as if it had been a complaint concerning a lawyer. That is because, pursuant to Rule 5.29, the OCDC is charged with the duty of investigating the unauthorized practice of law. Thus, such complaints, they say, should be viewed as falling under the protection of Rule 5.315.

Rule 5.315 appears to be a judicial codification by rule of the common law qualified privilege. Rule 5.315 provides a qualified privilege not only for purposes of defamation claims, but for other claims as well.

 A communication is qualifiedly privileged when "it is made in good faith upon any subject matter in which the person making the communication has an interest or in reference to which he has a duty," and when it is made "to a person having a corresponding interest or duty." *Rice v. Hodapp*, 919 S.W.2d 240, 244 (Mo. banc 1996). A qualified privilege arises from the necessity of full and unrestricted communication concerning a matter in which the parties have an interest or duty. *See id.;* 50 Am.Jur. 2d *Libel and Slander,* § 276 (1995). Whether the surrounding circumstances and relationships are such as to give rise to a qualified privilege is a question of law. *Rice,* 919 S.W.2d at 244. Here, Eftink clearly had at least a legitimate interest, if not a duty, to report his suspicions to the OCDC. Thus, we hold Eftink was entitled to the qualified privilege.

 The plaintiff may overcome a qualified privilege by proving by clear and convincing evidence that the defendant made the defamatory statement with actual malice or that the statements exceeded the exigencies of the situation. *Id.* In this case, there is no contention that the statements exceed the exigencies of the situation. And indeed, the letter was published only to the OCDC, which was charged with

responsibilities related to the unauthorized practice of law. In order to overcome the privilege, therefore, Bugg was required to offer the trial court some reason to believe that he could potentially show actual malice.

 Actual malice is not about whether Eftink had ill will toward Bugg. *See Smith v. UAW–CIO Fed. Credit Union,* 728 S.W.2d 679, 683 (Mo.App.1987). Actual malice is about whether the statements were false and were made either (1) with knowledge that they were false or (2) with reckless disregard for whether they were true or false, at a time when the defendant had serious doubts as to whether they were true. *Rice,* 919 S.W.2d at 244. Whether the defendant acted with malice is a question of fact for the jury. *Hellesen v. Knaus Truck Lines, Inc.,* 370 S.W.2d 341, 345 (Mo.1963). However, the issue will not be submitted to a fact finder when no substantial evidence of actual malice exists. *Id.*

Here, there is no dispute that the letter was factually true as far as the facts stated in the letter. Eftink's letter was specific, and referred the Disciplinary Counsel to specific cases so that any investigation could begin with the specific cases mentioned. There is no evidence that Eftink's letter was other than truthful.

Bugg contends, however, that it was not in good faith because Eftink did not disclose *all* pertinent facts. Bugg contends that Eftink should have informed the OCDC that the issue of unauthorized practice was raised in each of the four cases that Eftink mentioned, and that in each case *the court ruled* that Bugg was entitled to proceed with his assigned claim. The failure to point this out in the letter, says Bugg, should cause the loss of any claim of privilege because it shows the defendants did not act in good faith.

Bugg is entitled to all reasonable inferences from the record. *ITT*, 854 S.W.2d at 376. We hold, however, that it could not reasonably be said, even considering the omission about which Bugg complains, that the letter was anything other than truthful. Although Bugg had a document called an "assignment" in each case, presenting, *prima facie*, the appearance that the claim had been assigned to him for consideration, and was allowed by the court to continue, that fact does not necessarily give rest to reasonable concerns. Indeed, Eftink stated in the letter that his suspicion was that "if [Bugg] *ever collects* on any of those cases, he will 'assign' the money back to the corporation." (Emphasis added). Until a recovery were to occur, it would be impossible to know what Bugg would do with the recovery. Eftink's legitimate purpose in the letter was to initiate an investigation, based on concerns that were not alleviated by the fact that in each case Bugg was allowed to proceed as an assignee. Accordingly, it is clear that the letter did not present a distorted or false impression. There is no evidence of actual malice.

There are strong public policy reasons why we would not wish to discourage attorneys and members of the public from reporting their concerns. To be hypercritical in the evaluation of such letters would undermine the purpose of the privilege. This is illustrated in the fact that, although Eftink may not have known it at the time, there are public records showing that Bugg *has,* at least to some extent, engaged in the unauthorized practice of law. The facts related thereto are drawn from the records of cases on appeal to this court. We take judicial notice of those records in order to illustrate the importance of the reporting of legitimate concerns. The fact that Bugg is in possession of documents labeled "assignments," for which he paid a nominal amount of money, does not exempt him from suspicion with regard to the unauthorized practice of law.

Because Eftink's letter enjoys a privilege as a matter of law to all claims pleaded, it is unnecessary to consider the arguments and authorities of the parties as to other issues.

We affirm the trial court's ruling granting summary judgment to the Respondents.

## Appendix

### Case No. 1

Bugg appeared as an appellant in 2001 in *Bugg v. Moberly Correctional Center,* [50 S.W.3d 924 (Mo.App. 2001)]. That case was an appeal of proceedings in which Bugg was originally armed with a document executed by his brother, Billy Bugg, purporting to grant a "power of attorney" to Bugg to authorize Bugg to represent Billy with regard to a claim in the Division of Workers' Compensation. Bugg was rebuffed in his effort to act as counsel for his brother, and then, *pro se,* filed a declaratory judgment action seeking a ruling that would permit him to prosecute his brother's claim. The trial court ruled against Bugg, and he appealed to this court. This court held that Billy could not delegate his representation to someone without a law license, and that the "power of attorney" did not suffice to authorize Bugg to represent his brother. Later, Bugg and his brother Billy purported to file an action against various officials and entities for actual and punitive damages growing out of an alleged breach of an agreement between Billy and Billy's employer, the Department of Corrections. They sought recovery of back pay and a lost bonus and recovery of damages for emotional distress. Attached to the petition was "an assignment of rights," executed by Billy. According to Bugg's petition, this was a

"split assignment" by virtue of which Billy gave his brother all interest in the employment agreement, and also gave Bugg "bare legal title" to his workers' compensation claim, but "did not assign any injury benefits to [Bugg], only title to the claim." The trial court found the assignment invalid and dismissed Bugg, leaving Billy the sole plaintiff.

Bugg did not appeal his dismissal. Bugg later, however, attempted to file a second assignment by Billy to him of "all rights, title, and interest as sole plaintiff" in the same suit. He also attempted to file a "notice of substitution of parties," in which he gave notice that he would be the plaintiff in the suit. The court disallowed the assignment and substitution. After Billy subsequently failed to prosecute the action, the action was dismissed. Billy did not appeal, but Bugg filed a motion under Rule 74.06 to set aside the judgment. When that was ruled against him, he appealed. Bugg's appeal to this court was found to be without merit.

### Case No. 2

Bugg also appeared in this court in *Estate of Laura Downs v. Eldon Bugg,* [75 S.W.3d 853 (Mo.App. 2002)], in which Bugg appealed a judgment rendered against him in a discovery of assets proceeding. In that case someone drew trust documents for Laura Downs, a long-time family friend of Bugg, for a living trust. Someone also drew a durable power of attorney for health care purposes, of which there was one section that also purported to give to Bugg broad fiduciary authority to act in behalf of Downs "with respect to any and all matters whatsoever without limitation or reservation."

Bugg borrowed $42,000 from Ms. Downs, which he then loaned to his employer, Caldwell Computing Technology,

Inc. Bugg executed a $42,000 promissory note to Ms. Downs. He then drafted an assignment whereby he, in behalf of Ms. Downs, pursuant to the purported power of attorney, transferred into a trust the $42,000 note. Downs and Bugg were co-trustees of that trust, and Bugg's own living trust was the beneficiary of that trust. About a year later, Bugg, in behalf of the trust, acknowledged accepting from Caldwell the sum of $37,212 as "full and final payment" of all amounts due to the Laura Downs Revocable Trust. Laura Downs' conservator, who had been appointed in the interim, sought a judgment that all assets included in the $42,000 belonged to the conservatorship. The trial court granted summary judgment in favor of the conservatorship. This court affirmed by summary order pursuant to Rule 84.16(b).