# United States Court of Appeals
**FOR THE EIGHTH CIRCUIT**

_____

Nos. 09-2696/09-3488

_____

| | |
|---|---|
| Melinda R. Fisher, | * |
| | * |
| Appellant, | * |
| | * Appeal from the United States |
| v. | * District Court for the |
| | * Western District of Missouri. |
| Wal-Mart Stores, Inc.; Wal-Mart | * |
| Stores East, LP; Officer James F. | * |
| Junkin; Sergeant Dale Loney, | * |
| | * |
| Appellees. | * |

_____

Submitted: February 9, 2010
Filed: September 1, 2010

_____

Before RILEY, Chief Judge,[1] SMITH and SHEPHERD, Circuit Judges.

_____

SMITH, Circuit Judge.

Melinda Fisher filed suit against Wal-Mart Stores East, L.P. and Wal-Mart Stores, Inc. (collectively "Wal-Mart") and two Raymore, Missouri, police officers following an incident involving counterfeit money orders at a Raymore Wal-Mart store. Fisher sued Wal-Mart on various claims, including false imprisonment, slander, intentional infliction of emotional distress, and malicious prosecution. Fisher also

_____

[1]The Honorable William Jay Riley became Chief Judge of the United States Court of Appeals for the Eighth Circuit on April 1, 2010.

brought a 42 U.S.C. § 1983 claim for unlawful arrest against the Raymore police officers who arrested her. The district court[2] granted summary judgment on all counts for Wal-Mart and the officers. The court also awarded attorneys' fees to the officers because it found that Fisher's claims against the officers were groundless and unreasonable. Fisher appeals, contending that the district court erred in granting summary judgment to Wal-Mart on her false imprisonment, slander, and malicious prosecution claims, and erred in granting summary judgment to the officers on her § 1983 claim. Fisher also argues that her claim against the officers was not frivolous and therefore the district court abused its discretion in awarding the officers attorneys' fees. We affirm.

I. *Background*[3]

On January 9, 2008, UPS delivered four counterfeit $500 Wal-Mart money orders to Fisher at her Belton, Missouri home. Each $500 money order was made payable to Melinda Fisher by a "Christine Shaw." Fisher does not know a "Christine Shaw" and has never met or spoken with a "Christine Shaw." Also on January 9, Fisher coincidentally received a $100 Wal-Mart money order from Clarene Banks, the grandmother of Fisher's nephew, Kadeem, who lives with Fisher. Banks sent the money order to Fisher as a birthday gift to Kadeem.

Fisher was suspicious that someone she did not know sent her four $500 money orders. Fisher surmised that "Christine Shaw" must have gotten her name and address from an internet website. Fisher then decided to go to Wal-Mart to cash the legitimate money order from Clarene Banks and check into the legitimacy of the four suspicious

---

[2]The Honorable David Gregory Kays, United States District Judge for the Western District of Missouri.

[3]As this is an appeal from the grant of summary judgment, we review and recite the facts in the light most favorable to Fisher as the non-moving party. *Mirax Chem. Prods. Corp. v. First Interstate Commercial Corp.*, 950 F.2d 566, 569 (8th Cir. 1991).

money orders. Fisher, her infant son, her boyfriend, her cousin, and Kadeem all went to the Raymore Wal-Mart. When Fisher arrived at the store, she immediately went to the customer service counter and spoke with associate Kristie Keen. Fisher first presented Keen with the genuine $100 money order, and Keen cashed it. Fisher then presented the four fraudulent money orders. Fisher asserts that she handed the four money orders to Keen and asked Keen if they were real. Fisher states she did not intend to cash them and only wanted to know if they were real or fake. Keen was the only Wal-Mart associate with whom Fisher spoke on January 9. Keen did not accuse Fisher of committing a crime.

Keen recognized the money orders as likely fraudulent and called Wal-Mart's asset protection manager, Wanda Gonzalez. Keen then told Fisher that she would need to keep the four counterfeit money orders. Fisher and her group then decided to leave Wal-Mart. Keri Christeson, another Wal-Mart asset protection employee, was called to the front of the store. Keen and Gonzalez told Christeson that a woman was trying to cash fake money orders. Christeson called the Raymore Police Department and had the following conversation with the police dispatcher:

DISPATCHER: Police Department, Officer Stevie.

CHRISTESON: Oh, hi, it's Keri at the Raymore Free-Mart. Hey, I have a girl at the service desk *trying to cash some fake money orders* and, uh, officers wanted me to call [']em the next time this happened so they could get a little bit more information.

DISPATCHER: Allllll righty, are you guys going to keep her up there 'til we get there?

CHRISTESON: We're going to try.

DISPATCHER: All right, I'll let 'em know.

(Emphasis added.)

Officer James F. Junkin was in the Wal-Mart parking lot when the call came from the Raymore police dispatcher stating that a person was trying to pass fraudulent checks at the Wal-Mart service desk. After receiving the call from dispatch, Officer Junkin waited until people matching the description given by Wal-Mart to the police dispatcher exited the store. Officer Junkin then stopped Fisher and her entire group and asked for identification. Officer Junkin then asked them if they had been at the customer service desk. Sergeant Dale Loney soon arrived and went into the store to investigate while Officer Junkin remained outside with Fisher. Sergeant Loney testified that he spoke with Gonzalez, Keen, and Christeson. Gonzalez and Keen told Sergeant Loney that Fisher had attempted to cash counterfeit money orders. Christeson confirmed that Fisher brought the money orders to the service desk. Christeson also gave Sergeant Loney the fake money orders for his inspection.

Sergeant Loney had worked with Wal-Mart employees in the past and considered them reliable informants as to suspected crimes at the Wal-Mart store. Based on the purportedly fraudulent money orders and the statements from Wal-Mart employees that Fisher had attempted to cash them, Sergeant Loney believed that there was probable cause that Fisher had committed a crime. Sergeant Loney then directed Officer Junkin to arrest Fisher for attempting to commit an offense.

Officer Junkin arrested Fisher without incident. Neither Wal-Mart nor any of its associates signed a complaint in the underlying criminal matter. The Raymore City Prosecutor decided to prosecute Fisher for attempting to cash the counterfeit money orders. The case was later dismissed without prejudice because Keen did not appear in court to testify. Immediately after the suit was dismissed, Fisher filed this lawsuit. Fisher alleged civil claims for false imprisonment/unlawful arrest against both the

-4-

Raymore police officers and Wal-Mart, as well as slander and intentional infliction of emotional distress and malicious prosecution against Wal-Mart.

The district court ruled against Fisher on all counts. First, the court found that although Fisher was restrained against her will, the police had probable cause to do so and thus Wal-Mart was not liable for false imprisonment for calling the police. Even assuming the arrest was unlawful, the district court held that Wal-Mart would not be liable because, as a matter of law, the employees did nothing more than provide the officers incorrect information and did not give false information knowing to it be false. The district court then concluded qualified immunity barred Fisher's slander claim against Wal-Mart. The court granted summary judgment to Wal-Mart on the intentional infliction of emotional distress claim after Fisher conceded in her answer that she could not maintain the claim. The court also found that Fisher's claim for malicious prosecution failed because Wal-Mart's conduct was not motivated by malice.

The district court also held that Fisher could not establish a § 1983 violation against the police because the police had probable cause to arrest Fisher. The district court awarded attorneys' fees to Sergeant Loney and Officer Junkin because it found that Fisher's continued prosecution of her § 1983 false arrest claim when there was clear probable cause was unreasonable. The court agreed that the police officers request of fees in the amount of $7,249.45 was reasonable, but it reduced the award to $2,414.07 due to Fisher's financial condition.

## II. *Discussion*

On appeal, Fisher argues that the district court (1) erred in granting summary judgment to the officers on her § 1983 claim; (2) abused its discretion in awarding the officers attorneys' fees; and (3) erred in granting summary judgment to Wal-Mart on her false arrest; defamation; and malicious prosecution claims.

A. *Section 1983 Claims*

Fisher first argues that the police violated her Fourth Amendment rights against unreasonable seizure by falsely arresting her. Fisher contends that factual disputes remain as to exactly what information the police had at the time of making the arrest. Fisher contends that when the evidence is viewed most favorably to her, Sergeant Loney did not investigate the facts before ordering Officer Junkin to arrest Fisher and that Officer Junkin did not have probable cause to arrest Fisher.

Sergeant Loney and Officer Junkin respond that summary judgment was appropriate because, after viewing the facts in the light most favorable to Fisher, the police had probable cause to arrest Fisher. The officers maintain that (1) Wal-Mart employees reported to Raymore police that Fisher was attempting to cash fake money orders; (2) Sergeant Loney was told by one or more Wal-Mart employees that Fisher had tried to cash the fake money orders; (3) the Wal-Mart employees had been reliable informants about criminal activity at the store in the past; and (4) the police are not required to believe Fisher's claim of innocence.

Fisher's §1983 claim, like the three claims against Wal-Mart that will follow, must be reviewed de novo, construing the record in the light most favorable to the nonmoving party. *Johnson v. AT&T Corp.*, 422 F.3d 756, 760 (8th Cir. 2005). "Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Thomas v. Union Pac. R.R. Co.*, 308 F.3d 891, 893 (8th Cir. 2002). This court "may affirm the district court on any basis supported by the record." *Id.*

"A warrantless arrest is consistent with the Fourth Amendment if it is supported by probable cause." *Amrine v. Brooks*, 522 F.3d 823, 832 (8th Cir. 2008). Whether the police had probable cause at the time of Fisher's arrest is a question of law for a court

to decide. *Peterson v. City of Plymouth*, 60 F.3d 469, 475 (8th Cir. 1995). "An officer has probable cause to make a warrantless arrest when the facts and circumstances are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense." *United States v. Torres-Lona*, 491 F.3d 750, 755 (8th Cir. 2007). "To determine the existence of probable cause, we look at the totality of the circumstances as set forth in the information available to the officers at the time of arrest." *United States v. Kelly*, 329 F.3d 624, 628 (8th Cir. 2003). "As probable cause is determined at the moment the arrest was made, any later developed facts are irrelevant to the probable cause analysis for an arrest." *Amrine,* 522 F.3d at 832 (internal quotations and citation omitted). "[O]fficers are generally entitled to rely on the veracity of information supplied by the victim of a crime. . . . " *Peterson*, 60 F.3d at 474–75.

Fisher argues that the evidence exculpates her and that had Sergeant Loney properly investigated upon arrival whether Fisher attempted to cash the fake money orders, she would not have been arrested. However,"[o]fficers are not required to conduct a 'mini-trial' before arrest. . . ."*Amrine*, 522 F.3d at 832 (citation omitted). We consider the pertinent question to be whether, viewing the evidence in Fisher's favor, the Raymore police (and specifically Sergeant Loney, who instructed Officer Junkin to make the arrest) had probable cause at the time of the arrest; that is, whether the facts and circumstances would have led to a reasonable conclusion that a crime had been committed. Under these facts, we find that probable cause existed to arrest her.

Undisputed facts show that Christeson called the Raymore police and told them that "a girl at the service desk [is] trying to cash some fake money orders." The Raymore police viewed these Wal-Mart employees as credible based upon previous experiences. Christeson confidently identified Fisher to Sergeant Loney as the person at the front desk who had brought the fake money orders. Sergeant Loney verified that the money orders were counterfeit. Given these undisputed facts, probable cause supported the warrantless arrest.

However, we do note that a factual dispute exists as to whether Sergeant Loney spoke with Keen and Gonzalez before the arrest. Sergeant Loney testified that he spoke with Keen, Gonzalez, and Christeson regarding Fisher's attempted passing of the fraudulent money orders. But, Keen testified that she did not speak with Sergeant Loney:

> QUESTION: Did you speak to Sergeant Loney at any time on January 9?
>
> KEEN No sir. The only person I talked to was Detective Fedric.

Gonzalez similarly testified that she did not speak to Sergeant Loney:

> QUESTION: Did you have any conversations with any of the police officers that came to the Wal-Mart store from the Raymore Police Department on January 9?
>
> GONZALEZ: Not that I recall.

Sergeant Loney stated that he spoke with all three and dealt primarily with Gonzalez when forming the decision to arrest Fisher. We must view the facts most favorably to Fisher and assume that he did not speak with either Keen or Gonzalez. Even assuming that fact to be true, sufficient evidence still supports probable cause. "In conducting [a probable cause] review, we determine from the totality of the circumstances whether a prudent person would believe [Fisher] had committed or was committing a crime, giving [Sergeant Loney] substantial latitude in interpreting and drawing inferences from factual circumstances." *United States. v. Washington*, 109 F.3d 459, 465 (8th Cir. 1997) (internal quotations and citation omitted). Additionally, Fisher appears to concede in her complaint that Sergeant Loney spoke with Wal-Mart employees regarding Fisher's attempted cashing of the money orders. Paragraph 14 of her first amended complaint states:

On January 9, 2008[,] employee[ ] Keri Christeson of Wal-Mart Store 319 in Raymore stated to employees of the Raymore, Missouri Police Department concerning the plaintiff, "I have a girl at the service desk that's trying to pass or cash some fake money orders" . . . ,"we are going to try to keep her [at the service desk] until the officers arrive." Additionally, on that date employees Keri Christeson, Wanda Gonzalez[,] and/or Kristie Keen stated to Raymore Police Officers with reference to the plaintiff that "she attempted to cash fake money orders" or words of similar effect.

Fisher argues that, under *Pearson v. Callahan*, 129 S. Ct. 808 (2009), we must first consider whether the police are entitled to qualified immunity before determining whether there was probable cause. We disagree. The *Pearson* Court did not review a finding of actual probable cause. *Id.* at 813. Rather, *Pearson* only reviewed the denial of a claim of qualified immunity and is thus inapposite. *Id.* Here, because there is actual probable cause, we need not determine whether qualified immunity shields the officers. *See Foster v. Metro. Airports Comm'n*, 914 F.2d 1076, 1079 (8th Cir. 1990) ("If probable cause was indeed present, it is not necessary to consider an immunity defense."). "Analysis of the probable cause issue involves two steps. The first inquiry is whether the officers actually had probable cause to arrest [Fisher]." *Peterson*, 60 F.3d at 473. "If the officers had probable cause, the arrests did not violate the Fourth Amendment and the officers are not liable." *Id.* Because we conclude that the officers had probable cause, we affirm the district court's grant of summary judgment.

B. *Attorneys' Fees*

Fisher appeals the district court's award of attorneys' fees to Sergeant Loney and Officer Junkin, arguing that because her claim was not frivolous, no award should have been given to the police officers. The officers respond that the district court did not abuse its discretion and properly awarded the attorneys' fees because Fisher continued to pursue a groundless and unreasonable claim.

The district court found that when Fisher filed the lawsuit she sincerely believed the officers lacked probable cause to arrest her. The court did not take issue with her lack of proof to support her belief at the time she filed. However, the court found that before filing suit Fisher "obviously knew, or should have known" that in order to prevail on an unlawful arrest claim Fisher would have to prove the police arrested her without probable cause. The court went on to find "textbook probable cause" and held that Fisher's continued prosecution of her false arrest claim against the officers in the face of this evidence upon discovery was unquestionably groundless and unreasonable.

We review the district court's award of fees under 42 U.S.C. § 1988(b) for an abuse of discretion. *Dillon v. Brown County, Neb.*, 380 F.3d 360, 363 (8th Cir. 2004). "An abuse of discretion occurs if the district court rests its conclusion on clearly erroneous factual findings or if its decision relies on erroneous legal conclusions." *Vonage Holdings Corp. v. Neb. Pub. Serv. Comm'n*, 564 F.3d 900, 904 (8th Cir. 2009). "We will not disturb a district court's discretionary decision if it remains within the range of choices available, accounts for all relevant factors, does not rely on any irrelevant factors, and does not constitute a clear error of judgment." *Id.*

> Pursuant to § 1988, a district court may award attorney[s'] fees to a prevailing party in a lawsuit brought to enforce a provision of § 1983. A prevailing defendant, however, is entitled to attorney[s'] fees only in very narrow circumstances. A plaintiff should not be assessed his opponent's attorneys' fees unless the district court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so. Even allegations that, upon careful examination, prove legally insufficient to require a trial are not, for that reason alone, groundless or without foundation. . . . Rather, so long as the plaintiff has some basis for [her] claim, a prevailing defendant may not recover attorneys' fees.

*Williams v. City of Carl Junction, Mo.*, 523 F.3d 841, 843 (8th Cir. 2008) (internal quotations, alterations, and citations omitted).

The Supreme Court warns that a court should avoid "*post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421–22 (1978). "Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit." *Id.* at 422. However, an award may be warranted if a plaintiff continues to litigate after it becomes apparent that his claims are groundless and unreasonable, even if the plaintiff initially filed the action with the belief that his allegations would be supported. *Am. Family Life Assurance Co. of Columbus v. Teasdale*, 733 F.2d 559, 569 (8th Cir. 1984). In *American Family*, we held that "the district court acted within its discretion in awarding attorney[s'] fees . . . based upon its well-supported findings that [plaintiff's] suit was frivolous, unfounded, and vexatiously brought and pursued." *Id.*

In this case, the undisputed facts that surfaced after discovery included the fact that (1) the police had a report from their dispatcher that someone attempted to cash fraudulent money orders at Wal-Mart; (2) a Wal-Mart employee identified Fisher as that person; (3) Sergeant Loney had a reasonable basis to believe this employee; and (4) Fisher possessed the fraudulent money orders when she was arrested. These facts, as the district court noted, make a clear case that Sergeant Loney had probable cause to arrest Fisher. We agree with the district court that following discovery it should have been obvious that there was no evidence to support Fisher's § 1983 claim.

The district court extensively discussed the proper *Christiansburg* standard in its order. Additionally, the court awarded the officers just one-third of the expenses they actually incurred due to Fisher's financial status. *See Coleman v. Gen. Motors Corp.*, 667 F.2d 704, 708 (8th Cir. 1981). Finally, the stringent abuse-of-discretion

review standard requires that even if we disagree with the district court we may not simply substitute our judgment for that of the district court. Therefore, the award of attorneys' fees to the officers is affirmed.

## C. *False Imprisonment*

As to Wal-Mart, Fisher first claims that Wal-Mart should be held liable for false imprisonment. Fisher contends that Wal-Mart instigated a non-consensual, unlawful restraint. Fisher contends this restraint was unlawful because Wal-Mart conveyed more than simply wrong information to the police; it supplied knowingly false, incomplete, or misleading information. Wal-Mart responds that Fisher's restraint was not unlawful and that even if it was, there is no evidence that Wal-Mart did anything other than supply inaccurate information to the police.

Under Missouri law, "[t]he elements of a cause of action for false imprisonment are the detention or restraint of one against h[er] will, and the unlawfulness of such detention or restraint." *Ivy v. Wal-Mart Stores, Inc.*, 777 S.W.2d 682, 683–84 (Mo. Ct. App. 1989). The Raymore police officers had probable cause to arrest Fisher. Therefore, the arrest was not unlawful, and Fisher cannot maintain a cause of action for false imprisonment against Wal-Mart.

## D. *Defamation*

Fisher next argues that Wal-Mart, through its employees, made false statements to the police, namely that Wal-Mart had "a girl at the service desk trying to cash some fake money orders" and other identifying information incriminating Fisher, and that Fisher's reputation was damaged. Wal-Mart responds that Fisher cannot show that the employees made any false statements, or, if they did, that such statements actually damaged Fisher's reputation. Wal-Mart also argues that Fisher's claim is barred by a qualified privilege.

"In Missouri, whether language is defamatory and actionable is a question of law to be decided by the court, and the court must determine whether a statement claimed to be slanderous is reasonably capable of defamatory meaning." *Rockwood Bank v. Gaia*, 170 F.3d 833, 841 (8th Cir. 1999). In making this determination the court must decide "whether the communication reasonably conveyed the meaning ascribed to it by plaintiff and, if so, whether the meaning was defamatory in character." *Id*. (internal quotations and citations omitted). Wal-Mart's subjective belief in the truth of the alleged defamatory statement is not a defense to liability. *Overcast v. Billings Mut. Ins. Co*., 11 S.W.3d 62, 73 (Mo. 2000).

The elements of defamation are (1) publication (2) of a defamatory statement (3) that identifies the plaintiff, (4) is false, (5) is published with the requisite degree of fault, and (6) damages the plaintiff's reputation. *Id*. at 70. Because Fisher is a private individual, not a public figure, she need only prove negligence on the part of the speaker. *Id*. However, to recover punitive damages, Fisher must prove actual malice, which is defined as making a false statement with knowledge that it was false, or making a false statement with reckless disregard for whether it was true when the defendant had serious doubt as to whether it was true. *Id*.

Accepting Fisher's version of facts, Fisher can make out a prima facie case for common law defamation under a summary judgment standard accepting her view of the facts. To wit, Christeson reported criminal activity to the Raymore Police Department. Christeson later identified Fisher as the person who attempted to cash fraudulent money orders. Fisher and her family members all testified that Fisher merely asked if the money orders were real and never asked to cash the money orders. Because the standard is negligence, to survive summary judgment Fisher does not have to show that Wal-Mart knowingly made false statements.

Fisher can also likely prove the final prong of a defamation claim—damages. Sergeant Loney testified that his opinion of Fisher as an innocent citizen changed and

he thought of her as a criminal based on what Wal-Mart employees reported. Fisher also testified about her fear of having to reveal the incident in the future. But, while Fisher can make a prima facie case of defamation, under Missouri common law, certain statements enjoy a conditional or qualified privilege. *Rice v. Hodapp*, 919 S.W.2d 240, 243 (Mo. 1996).

> A communication is held to be qualifiedly privileged when it is made in good faith upon any subject-matter in which the person making the communication has an interest or in reference to which he has a duty, and to a person having a corresponding interest or duty, although it contains matter which, without such privilege, would be actionable.

*Carter v. Willert Home Products, Inc.*, 714 S.W.2d 506, 513 (Mo. 1986) (internal quotations and citation omitted), *abrogated on other grounds by Nazeri v. Mo. Valley Coll.*, 860 S.W.2d 303, 308 (Mo. 1993). "The applicability of the defense of qualified privilege is a matter of law to be decided by the trial court." *Id.* "A qualified privilege arises from the necessity of full and unrestricted communication concerning a matter in which the parties have an interest or duty." *Bugg v. Vanhooser Holsen & Eftink P.C.*, 152 S.W.3d 373, 377 (Mo. Ct. App. 2004).

According to Wal-Mart and not disputed by Fisher, Christeson's job responsibilities and duties included helping Wal-Mart prevent fraud. Thus, even if Christeson's statement to police that there is "a girl at the service desk trying to cash some fake money orders" was factually incorrect, the statement "concerned a matter in which the parties have an interest of duty." Therefore, we hold that under *Carter* and *Bugg* the statement is qualifiedly privileged and does not give rise to liability for slander without a showing of actual malice.

"The plaintiff may overcome a qualified privilege by proving by clear and convincing evidence that the defendant made the defamatory statement with actual malice or that the statements exceeded the exigencies of the situation." *Id.* To prove

actual malice the plaintiff must show the statement was made with knowledge that it was false or with reckless disregard for the truth at a time when the defendant had serious doubts as to whether it was true. *Id*. Fisher has the burden to prove this actual malice. *Estes v. Lawton-Byrne-Bruner Ins. Agency Co.*, 437 S.W.2d 685, 691 (Mo. Ct. App. 1969).

Ordinarily, a determination of actual malice is a fact question for the jury. "Whether the defendant acted with malice in making the defamatory statement or whether the statement made exceeded the exigencies of the situation are questions of fact for the jury, unless no substantial evidence of actual malice is presented, in which case the court should direct a verdict." *Deckard v. O'Reilly Auto., Inc.*, 31 S.W.3d 6, 16 (Mo. Ct. App. 2000), *overruled on other grounds by Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 223 (Mo. 2003). Here, the district court did not direct a verdict, but granted a motion for summary judgment after finding no evidence of actual malice.

Fisher makes a passing argument that Christeson's use of the word "girl" when Fisher is actually 30 years old proves racial animus. She offers no evidence to support this argument and the record reflects no other evidence of racial animus or hostility toward Fisher. Not every use of the word "girl" amounts to racial insult. *Whitley v. Peer Review Sys., Inc.*, 221 F.3d 1053, 1056 (8th Cir. 2000). As we discussed *supra* in Part II.A, the evidence does not show that Christeson and other Wal-Mart employees called the police for illegitimate purposes or that they knowingly uttered false statements to police.

Although malice is usually a fact question for a jury, when there is "not one scintilla of evidence to support" a finding of actual malice, "the trial court was correct . . . in holding that a submission [to the jury] requiring a finding of actual malice was not supported" as a matter of law. *Estes*, 437 S.W.2d at 694. Other Missouri courts have found that when plaintiffs "have failed to offer any proof whatsoever of

defendant's knowledge that their statements to . . . authorities were false, or of their recklessness with regard to the veracity of the statements[,]" summary judgment is appropriate. *Hardge-Harris v. Pleban*, 741 F. Supp. 764, 773 (E.D. Mo. 1990).

We hold that Missouri's qualified privilege applies and affirm the district court's grant of summary judgment.

E. *Malicious Prosecution*

In Fisher's final argument she contends that Wal-Mart maliciously instigated a criminal prosecution against her by knowingly giving false information to the police. Fisher argues that because, under Missouri law, malice may be inferred from a failure to investigate and acting in haste, Wal-Mart should be held liable. These arguments, Fisher concedes, are very similar to her claims of false arrest and slander. Wal-Mart responds that it did not act with improper motive or instigate Fisher's arrest. Additionally, Wal-Mart asserts that there was probable cause for Fisher's prosecution and its conduct was not motivated by malice. In short, Wal-Mart advances much of the same defenses it does in the previous two sections.

Missouri law requires "that proof of the essential elements of malicious prosecution be strict and clear." *Burnett v. Griffith*, 769 S.W.2d 780, 783 (Mo. 1989). The six elements are "(1) the commencement of a prosecution against the plaintiff; (2) the instigation by the defendant; (3) the termination of the proceeding in favor of the plaintiff; (4) the want of probable cause for the prosecution; (5) the defendant's conduct was actuated by malice; and (6) the plaintiff was damaged." *Sanders v. Daniel Int'l Corp.*, 682 S.W.2d 803, 807 (Mo. 1984).[4]

---

[4]Throughout her brief, Fisher states that the legal standard to be applied to both this and the other claims are Missouri's approved jury instructions. As the district court properly pointed out, these instructions are not a source of law—Missouri appellate and Eighth Circuit case law is the proper source.

To be held liable for malicious prosecution, a defendant must have initiated the proceedings "primarily for a purpose other than that of bringing an offender to justice." *Cassady v. Dillard Dept. Stores*, 167 F.3d 1215, 1219 (8th Cir. 1999) (internal quotations and citation omitted). "To demonstrate the legal malice necessary to sustain the judgment, [Fisher] [i]s required to show either that [Wal-Mart] had an illegitimate motive for the prosecution, or that it knowingly acted with flagrant disregard for [Fisher's] rights so that an improper motive may be inferred." *Id*.

Fisher argues that Wal-Mart instigated the prosecution against Fisher because Officer Junkin testified that he would not have attempted to pursue this case if Wal-Mart had asked the police to drop it. This action alone is not enough to raise Wal-Mart to the level of an "instigator." The "[m]ere giving of honest assistance and information which leads to a prosecution does not necessarily render a person liable as an instigator of that prosecution. . . . " *Hardge-Harris*, 741 F. Supp. at 774 (internal quotations and citation omitted). "To impose liability on a defendant for malicious prosecution, defendant must advise, encourage, pressure, or cause the institution of the prosecution." *Schumer v. Craig Distrib. Co.*, 745 S.W.2d 163, 165 (Mo. Ct. App. 1987). In *Schumer*, the plaintiff wrote an insufficient funds check to the defendant. *Id*. at 166. The defendant spoke to the prosecutor about the plaintiff. *Id*. The prosecutor then brought charges against the plaintiff, although the defendant did not request that he do so. *Id*. The court found that the prosecutor's decision to bring charges "was made without the advice, pressure, or encouragement of [the] defendant" and therefore there was no support for a finding of malicious prosecution. *Id*.

Here, Wal-Mart did not ask the prosecutor to bring charges against Fisher, nor did the employees request that the police arrest Fisher. In fact, at least some employees did not even know Fisher was arrested until much later. Wal-Mart did not advise, encourage, or pressure the police to arrest Fisher. Additionally, for the reasons cited *supra*, Fisher cannot show that Wal-Mart acted with the legal malice necessary to sustain a judgment in her favor.

Finally, we note that "[a]ctions for malicious prosecution have never been favorites of the law" in Missouri. *Sanders*, 682 S.W.2d at 806. "There is almost universal agreement that sound public policy dictates that the law should encourage the uncovering and prosecution of crime." *Id.* "Any policy that discourages citizens from reporting crime or aiding in prosecution would be undesirable and detrimental to society in general." *Id.* (internal quotations and citation omitted).

III. *Conclusion*

Accordingly, we affirm.

_____