BEAM, Circuit Judge,
dissenting.
The district court granted summary judgment to all defendants, finding that Tommy Nichols, a sometimes Kansas City, Missouri, police officer, had probable cause to arrest William Royster. The court majority erroneously affirms this conclusion. Accordingly, I dissent.
The court’s determination of the material facts at issue in this case and its conclusion that Nichols was functioning as a sworn Kansas City police officer at all relevant times are both problematic.
I agree with the court that “ ‘[a]s this is an appeal from the grant of summary judgment, we review and recite the facts in the light most favorable to [Royster] as the non-moving party.’ ” Ante at 684 (second alteration in original) (quoting Fisher v. Wal-Mart Stores, Inc., 619 F.3d 811, 814 n. 3 (8th Cir.2010)). But, the court fails to honor this requirement as to Nich *694 ols’ arrest authority and as to his supposed probable cause to arrest Royster. The facts and law concerning these separate issues are intertwined and substantially related.
Kona Grill (Kona) was a tenant of the County Club Plaza (Plaza). The Plaza provided security services for its tenants, including Kona, and provided such services through Chesley Brown International, Inc., d/b/a Plaza Security (Chesley Brown). Nichols’ day job, so to speak, was as a member of the Kansas City Police Department. However, at all times relevant to this dispute he was an employee of Chesley Brown. Chesley Brown had a security station “right above” Kona which included a jail that was at times referred to as a holding cell. During the time of his interactions with Royster, Nichols was being paid, and perhaps even provided fringe benefits by Chesley Brown, and was directly supervised by Chesley Brown personnel, not by members of the Kansas City Police Department.
The Kansas City Police Department specifically authorized its officers such as Nichols to accept employment as “off-duty [security] officerfs]” and the Department specifically stated that it “[did] not provide workers’ compensation or general liability coverage for off-duty employment. The legal authority [of officers working off-duty] is limited to the enforcement of federal law, state statutes and municipal ordinances.” But, “[o]ffieers cannot use police authority to enforce a private employer’s policies and regulations.”
With this for background, I turn to the facts, reviewing them as I must in the light most favorable to Royster, the non-moving party. I agree generally with a good bit of the court’s factual recitation. I disagree, however, with several facts adopted by the court and include several material facts omitted by the court.
I agree that Royster went to Kona during the afternoon of February 28, 2006, and that he was asked to leave. The record indicates that this request was triggered when Royster’s guest purportedly made an untoward comment to one of Kona’s regular customers and Rosenkoetter, Kona’s manager, asked the two of them to leave Kona. And, while Royster left without his credit card and without signing a “credit-card receipt,” the evidence clearly indicates that he was not asked to sign a receipt, indeed, no such receipt was even generated by Kona until the later confrontation between Rosenkoetter, Nichols and Royster occurred upon Royster’s return for his card. Thus, while Royster conceded that Nichols testified that he (Nichols) “was told [by Rosenkoetter] that the parties were being told to leave from an inappropriate comment and that they refused to pay their tab,” ante at 684 (alteration in original), Royster did not concede that the statement was true, as stated in the court’s footnote 3. Royster’s evidence clearly shows that no demand for payment was made nor was a tab prepared and presented until Royster returned for his credit card and was accosted by Rosenkoetter in Nichols’ presence.
Of more importance are other omitted facts and acts that occurred at Kona and in Nichols’ presence. Royster’s server at Kona testified that her (and by clear inference Kona’s) normal practice was for a server to print an “itemized receipt along with [the] credit[-]card receipt” to be presented to the customer but she did not 100 percent remember if she had done so at the time of this untoward event. But, on this occasion, she testified that after closing the tab and printing off the credit-card receipt after Rosenkoetter’s request, she handed the card, the receipt and all other items to Rosenkoetter. Thus, reviewing these facts in the “light most favorable to *695 [Royster],” Fisher, 619 F.3d at 814 n. 3, Royster, in Nichols’ presence, was either being presented a credit-card receipt without an itemization in violation of the normal practice at Kona (and most other establishments in America) or a credit-card receipt and an itemization that he was not permitted to examine before being required to sign the receipt — even though he vigorously demanded the right to see an itemization before being forced to do so. Neither Nichols nor Royster appear to dispute this scenario but even if they do, the evidence when viewed favorably to Royster, as required, clearly establishes this set of circumstances.
Also, from the evidence viewed favorably to Royster, it does not appear that Nichols actually made the probable cause decision to arrest in this instance, it was Nichols’ employer Chesley Brown’s client Rosenkoetter who did so. Indeed, before Nichols agreed to seize Royster, Nichols had asked Rosenkoetter if he would “sign a [General Ordinance Summons].” Rosenkoetter said he would sign the complaint on behalf of Kona. Thus, under these circumstances, Nichols’ act was, rather than police business, more in the nature of enforcement of a private employer’s (Kona’s) “policies and regulations,” — an action prohibited by the Kansas City Police Department’s published procedures.
Finally, as to whether Royster’s detention was public or private business, after Nichols seized Royster he did not immediately turn him over to the custody of the police department. He handcuffed Royster, over his seemingly valid protests given the state of his health, the nature of the offense and the conflict of interest Nichols had in the situation, and took him upstairs to the Chesley Brown jail cell. At this location, Royster remained in handcuffs for some time, was refused toilet privileges and held for what appears to have been an unreasonable and an unpleasant period of time.
On the facts considered favorably to Royster, this case must be remanded for trial. I dissent.