# United States Court of Appeals

## For the Eighth Circuit

_____

No. 13-2179

_____

Travis Wayne Gibson

*Plaintiff - Appellant*

v.

Rick Cook; Jeff Mitchell; Josh Benton; City of Dexter; Carl Hefner;
Roxanne Cook; Catherine Rice; Tommy Horton

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Eastern District of Missouri - Cape Girardeau

_____

Submitted: April 14, 2014
Filed: August 20, 2014

_____

Before LOKEN, MURPHY, and KELLY, Circuit Judges.

_____

LOKEN, Circuit Judge.

Dexter, Missouri, police officers arrested Travis Gibson in January and April 2008 for violating a July 2007 Full Order of Protection, which the Circuit Court of Stoddard County had granted in response to a petition by Gibson's estranged wife, Ann. Gibson pleaded guilty to violating the Full Order after each arrest, receiving suspended sentences and probation. In May 2008, Gibson was arrested for blatant

disregard of a special condition of probation that he not contact Ann. He admitted multiple violations. Probation was revoked, and he was sentenced to three years in prison. In December 2009, a Stoddard County judge granted Gibson's motion to withdraw his guilty plea and ordered him released. Gibson remained in custody one additional day because the State of Louisiana had issued a detainer based on pending charges in that jurisdiction. Following his release, Gibson filed this action, asserting various state and federal claims against, *inter alia*, the arresting officers, the City of Dexter, his public defender, his probation officer, and two Stoddard County sheriffs for delaying his release. Defendants removed. Extensive discovery ensued.

Gibson appeals the district court's[1] grant of summary judgment dismissing his 42 U.S.C. § 1983 claims against those defendants. He does not appeal the dismissal of pending state law claims without prejudice. Viewing disputed facts in the light most favorable to Gibson, and reviewing the grant of summary judgment *de novo*, we affirm. Fisher v. Wal-Mart Stores, Inc., 619 F.3d 811, 814 n.3 (8th Cir. 2010) (standard of review). Magistrate Judge Blanton's forty-page opinion thoroughly reviewed the facts and legal issues surrounding each phase of this protracted dispute. Gibson v. Cook, No. 1:10-CV-00107-LMB, 2013 WL 1817786 (E.D. Mo. Apr. 29, 2013). We will limit this opinion to facts essential to each § 1983 claim Gibson appealed; additional background may be found in Judge Blanton's opinion.

**A. The January 12, 2008 Arrest.** On January 10, 2008, one of Ann's co-workers called the police "because [Ann's] husband was in the parking lot and there had been previous problems between the two in the past." When Dexter Police Officer Jeff Mitchell arrived, he learned "that Mrs. Gibson had an active Full Order of Protection against Mr. Gibson." Gibson was arrested for violating the Full Order.

---

[1]The Honorable Lewis M. Blanton, United States Magistrate Judge for the Eastern District of Missouri, presiding with the consent of the parties pursuant to 28 U.S.C. § 636(c).

Mitchell's incident report included the Full Order's case number and July 22 expiration date and the dispatcher's copy of that Order.

On the morning of January 12, a caller reported yelling and arguing at Ann's residence. Officer Mitchell and Officer Anthony Roberts were dispatched to investigate whether Gibson was violating the Full Order. When they arrived, Gibson told Officer Mitchell he was there to pick up his son, and Ann explained to Officer Roberts "that child custody was worked out through the court." The officers concluded the Full Order allowed Gibson to be present for this purpose, and he was not arrested. Officer Roberts waited at Ann's residence until Gibson left.

That afternoon, Officers Mitchell and Roberts were again dispatched to Ann's residence after Ann's daughter called to report that "Travis is back yelling at her mother." On arriving, Officer Roberts saw Gibson in the kitchen "down on one knee talking to Ann who was standing against the counter." Ann told Officer Roberts she "told Travis to leave several times but he wouldn't go," She gave the officers a copy of the Full Order, which stated, in relevant part,

> The Court hereby orders . . . [t]hat the above named Respondent [Travis Gibson] be restrained from any contact with the Petitioner [Ann Gibson].
>
> * * * * *
>
> Respondent shall not abuse, threaten to abuse, molest, stalk or disturb the peace of Petitioner wherever Petitioner may be found.
>
> * * * * *
>
> Respondent shall not communicate with Petitioner in any manner or through any medium.

-3-

Respondent shall not enter or stay upon the premises of wherever Petitioner may reside.

Ann and Gibson told Officer Roberts that their custody agreement "was in the court ordered separation paperwork." Neither Gibson nor Ann provided the officers with a copy of the separation decree, and Gibson did not claim he was present for a custody exchange. Gibson claims he told the officers he was not violating the Full Order because the November 2007 separation decree terminated some provisions of the Full Order, pursuant to Mo. Rev. Stat. § 455.060. The officers arrested Gibson for violating the Full Order because they found nothing in that Order allowing Gibson to be present at Ann's residence. As Officer Mitchell explained at his deposition, "if that order of protection is still in the computer as valid and we have it sent from Stoddard County that [it]'s valid, that's all that we have to go on [at] the scene. And if we have probable cause to believe that active order of protection has been violated, then we will arrest him."

Gibson argues that Officers Mitchell violated Gibson's Fourth Amendment rights by arresting him without probable cause or an arrest warrant. Whether a warrantless arrest was supported by probable cause "is a question of law for a court to decide." Fisher, 619 F.3d at 816. In evaluating probable cause, "we look at the totality of the circumstances as set forth in the information available to the officers at the time of arrest." It is significant for summary judgment purposes that Gibson does not dispute the officers' accounts of what they observed and what Ann and her daughter told them prior to the arrest. Gibson claims Ann lied to the officers, but "[o]fficers are generally entitled to rely on the veracity of information supplied by the victim of a crime." Id. at 816-17 (quotations omitted).

At the time of arrest, Officer Mitchell knew that Gibson had been inside Ann's home. A caller reported he was yelling at Ann, and Ann said Gibson refused to leave. Ann provided Officer Mitchell a copy of the unexpired Full Order, which prohibited

Gibson from communicating with Ann or "enter[ing] . . . upon the premises of wherever Petitioner may reside."  Officer Mitchell had participated in an arrest of Gibson two days earlier for violating the Full Order.  Based on this information, Officer Mitchell had probable cause to arrest Gibson for violating Mo. Rev. Stat. § 455.085.8 (violating the terms of a full order of protection "[by] entrance upon the premises of the petitioner's dwelling unit . . . shall be a class A misdemeanor").

Gibson argues that Mitchell lacked probable cause because he did not adequately investigate Gibson's claims that the separation decree terminated relevant portions of the Full Order by reason of Mo. Rev. Stat. § 455.060.4, which in January 2008 provided in relevant part:

> All provisions of an order of protection shall terminate upon entry of a decree of . . . legal separation except . . . provisions which . . . enjoin the respondent from abusing, molesting, stalking or disturbing the peace of the petitioner and which enjoin the respondent from entering the premises of the dwelling unit of the petitioner as described in the order of protection when the petitioner continues to reside in that dwelling unit unless the respondent is awarded possession of the dwelling unit.

This contention is without merit.  First, it is well-established that "officers are not required to conduct a 'mini-trial' before arrest."  Fisher, 619 F.3d at 817, quoting Amrine v. Brooks, 522 F.3d 823, 832 (8th Cir. 2008).  This was not a situation where Mitchell "disregard[ed] plainly exculpatory evidence," or "unreasonably failed to interview witnesses at [the] scene," circumstances that may create a duty to investigate more thoroughly, "at least in the absence of exigent circumstances" such as the risk of domestic violence present in this case.  Kuehl v. Burtis, 173 F.3d 646, 650 (8th Cir. 1999).  Thus, Officer Mitchell was not obligated to seek out a copy of the separation decree and research the parameters of this state statute before defusing a potentially dangerous domestic dispute by arresting the party who was violating a Full Order.  Once probable cause was established, Mitchell had no constitutional duty to investigate further.  Clayborn v. Struebing, 734 F.3d 807, 809-10 (8th Cir. 2013).

Second, this was not a case where "minimal further investigation would have exonerated the suspect." Kuehl, 173 F.3d at 650 (quotation omitted). The separation decree in fact made no mention of the outstanding Full Order. The statute on which Gibson relies, which to our knowledge has not been judicially construed, provides that a provision in a pre-decree protection order enjoining respondent from entering "the dwelling unit of the petitioner as described in the order" remains in effect. Gibson asserts this part of the Full Order terminated when Ann moved to a new residence. But the Full Order prohibited entering the premises "wherever [Ann] may reside." Thus, as in Borgman v. Kedley, 646 F.3d 518, 523-24 (8th Cir. 2011), even if Officer Mitchell had investigated further by obtaining and studying the separation decree and § 455.060.4, he still would have had probable cause to arrest Gibson for violating § 455.085.8.

**B. The April 9 Arrest.** Following his January 12 arrest, Gibson pleaded guilty to a misdemeanor violation of the Full Order. He received a suspended sentence and twelve months probation conditioned on no contact with Ann. On the evening of April 9, 2008, Ann's daughter called the police and reported, "Travis Gibson is at her house and her mother is outside with him. Travis is yelling." Officers Josh Benton and Rick Cook were dispatched to investigate; the dispatch noted, "There is an active ex-parte [order of protection] against him." When the officers arrived, Gibson was in his red pickup parked next to Ann in her vehicle. Gibson said it was his night to have custody of their son, and he had followed Ann home because the son did not have a house key. Ann reported that Gibson "followed her home and he parked next to her and started attacking her with questions; wanted to know where she was going and where she had been, tried to kiss her several times. She tried to push him away from her, he kept reaching for her face and telling her to look at him." She also said, "there is no child custody exchanging . . . tonight" and no reason for Travis to be at the residence because custody exchanges always occurred at school. The officers confirmed with dispatch there was an active order

of protection naming Ann as petitioner and Gibson as respondent and arrested Gibson for violating that order.

Gibson argues that Officers Benton and Cook lacked probable cause to arrest him, claiming he told them the separation decree made the order of protection ineffective under § 455.060.4. We reject these contentions for the reasons stated in Part A. We agree with the district court that Benton and Cook had probable cause to arrest Gibson for a criminal violation of the Full Order.

**C. Claim Against Gibson's Public Defender.** Following his April 9 arrest, Gibson was charged with a Class D felony violation of the Full Order, based on his prior misdemeanor conviction. See Mo. Rev. Stat. § 455.085.8. Public Defender Catherine Rice was appointed to represent Gibson. After Rice engaged in plea negotiations with the prosecutor, Gibson pleaded guilty on May 7 and received a suspended sentence with five years probation.

In a paradigm example of "biting the hand that feeds you,"[2] Gibson asserts a § 1983 claim against Rice, a private actor, alleging that she conspired with the prosecutor and other officials acting under color of state law to violate his constitutional rights. To survive summary judgment on this far-fetched claim, Gibson must establish "not only that a private actor caused a deprivation of constitutional rights, but that the private actor willfully participated with state officials and reached a mutual understanding concerning the unlawful objective of a conspiracy." Dossett v. First State Bank, 399 F.3d 940, 951 (8th Cir. 2005).

Gibson testified he saw Rice talk with the prosecutor -- an unsurprising event during plea negotiations -- but did not overhear anything that would be evidence of

---

[2]As defined in Webster's Third New International Dictionary, "to injure a benefactor maliciously."

a conspiracy. He argues there was sufficient evidence of a conspiracy because he told Rice and the prosecutor about § 455.060.4, yet the prosecutor proceeded with the case when there was no legal basis for the charge, and Rice allowed Gibson to plead guilty without arguing the effect of this statute to the court. The district court granted summary judgment dismissing the claim against Rice, concluding that Gibson "failed to point to facts sufficient to suggest Defendant Rice reached an understanding with the prosecutor or other state actors to violate his constitutional rights." We agree. Moreover, the alleged constitutional violation -- pleading guilty to a crime when there was no basis for the charge -- is completely unfounded, as we explained in Part A.

**D. The May 15 Arrest.** Probation Officer Roxanne Cook was assigned to supervise Gibson's five-year probation after he pleaded guilty to a felony violation of Mo. Rev. Stat. § 455.085.8. One special condition was that Gibson not contact Ann. Knowing of that condition, he called Ann and left a voice mail on May 11, four days after his guilty plea. When P.O. Cook introduced herself to Ann on May 14, Ann told Cook that Gibson had contacted her by mail and voice mail on May 11. Believing the phone call showed "blatant disregard" for the Full Order and violated the no-contact probation condition, Cook met with Gibson. He claimed a state statute "voided" the Full Order and told Cook that "he would continue to contact [Ann], there was no court or probation officer that would keep him from it." Cook issued a warrant based on the probation violation. Gibson was arrested on May 15. Gibson argues that P.O. Cook did not have probable cause for this arrest. Like the district court, we disagree. Gibson admitted contacting Ann, despite knowing of the no-contact probation condition. Particularly in light of Gibson's defiant refusal to comply with that condition, P.O. Cook had probable cause to issue the warrant. See Mo. Rev. Stat. § 217.722.1.

**E. Extended Custody on December 1, 2009.** After Gibson further violated the no-contact condition of his probation, the Stoddard County court revoked probation in August 2008 and sentenced Gibson to three years in prison. While

incarcerated, he filed a pro se motion to withdraw his May 2008 guilty plea to the felony violation. At a hearing on December 1, 2009, a Stoddard County judge granted the motion and ordered Gibson released.

Prior to that hearing, the Missouri Department of Corrections ("MDOC") transported Gibson to Stoddard County with instructions that, "If [Gibson's] case is set aside please return the offender to the [MDOC] facility for release." Stoddard County Deputy Sheriff Tommy Horton accompanied Gibson to the hearing and advised the judge that Gibson was an inmate of MDOC, not the county. After ruling that Gibson should be released, the judge agreed that Deputy Horton should contact MDOC before releasing Gibson. When contacted, MDOC first informed Deputy Horton that it would pick up Gibson on December 3 "for return to DOC to be released." One hour later, MDOC informed Deputy Horton "that the State of Louisiana had placed a detainer on Mr. Gibson [due to a pending charge]" and therefore DOC would pick him up on December 2. Deputy Horton briefed Stoddard County Sheriff Carl Hefner; Gibson remained in the Stoddard County Jail the night of December 1. The next day at 4 p.m., MDOC instructed Stoddard County, by fax, "Please release [Gibson] as soon as possible. . . . Louisiana has withdrawn their detainer and removed their hold." Gibson was promptly released.

Gibson argues that Deputy Horton and Sheriff Hefner violated Gibson's constitutional rights by imprisoning him after the judge ordered his release without "conducting any further investigation into the validity of the purported hold." To survive summary judgment on this claim, Gibson must show that Deputy Horton and Sheriff Hefner were deliberately indifferent to his right to a timely release. Goldberg v. Hennepin Cnty., 417 F.3d 808, 811 (8th Cir. 2005). After evaluating the summary judgment record, the district court concluded: "Under these circumstances, there is no evidence that Deputy Horton or Sheriff Hefner were deliberately indifferent. It was reasonable for Deputy Horton and Sheriff Hefner to hold plaintiff for the twenty-eight hour period at issue in light of the instructions from the MDOC . . . and the

felony charges pending in Louisiana." We agree. Gibson's contention that Mo. Rev. Stat. § 221.510 required the county sheriffs to search for outstanding warrants is without merit (indeed, frivolous). That statute applies to all law enforcement officials having custody of inmates to be released, including "department of corrections official[s]." It does not prescribe which official must make the outstanding-warrant inquiry. Here, it was entirely proper for the Stoddard County sheriffs, with the agreement of the releasing judge, to defer to MDOC.

**F. Claims against the City of Dexter.** Finally, Gibson argues that, if the arresting police officers violated his constitutional rights, the City was not entitled to summary judgment dismissing Gibson's claims that it failed to train and supervise its police officers. Our conclusion that Officers Mitchell, Benton, and Cook are not individually liable because they had probable cause to arrest Gibson forecloses these § 1983 claims against the City. See, e.g., Moore v. City of Desloge, Mo., 647 F.3d 841, 849 (8th Cir. 2011).

The judgment of the district court is affirmed.

_____